and I will now call the final case of today. Richard Brown versus Alex Azar et al. We have Caleb Kruckenberg for the appellant and we have Alyssa Klein for the appellee. Mr. Kruckenberg, if you are ready, please proceed. I see that you have three minutes that you're reserving for revote. Thank you, your honor, and may it please the court. Caleb Kruckenberg from the New Civil Sonya Jones and the National Apartment Association. In September of 2020. Let me, yes, I would. As I see this case, you lost nothing by the denial of preliminary injunction. Your clients could file suit for eviction. The tenants would plead this statute, the regulations in response, as having amended the terms of the rental agreement, you would have encountered, this is in state court, you would have encountered, or it could have been federal court for that matter, you would have encountered the answer, the defense, relying on the statute and the regulations, with the argument that the application of the statute of regulations is unconstitutional under the contract clause. Your sole claim is you're deprived from going to court, and what I'm suggesting is there's nothing to prevent you from going to court or any other landlord who's not a party in this case. That's not exactly correct, your honor, and what we see in the record is we actually have some of the plaintiffs here have been prevented from even filing eviction paperwork. Let's suppose tomorrow morning you went down to the state circuit court and filed a suit to have them evicted. There's nothing that would prevent you from doing that. If they filed a declaration that they're unable to pay the rent, you can try that issue. First, you can, wait a minute, you can try that issue. You could also defend a cert in response to their reliance on this statute and the regulations that it's unconstitutional as applied in this case. Well, I don't believe that's correct, your honor, because first of all, as I mentioned factually, I don't think that's the case, and the record doesn't, the record bears it out. You're telling me you couldn't go to state court and file suit? Yes, and we have. Wait a minute, what would stop you? The CDC eviction order. No, it doesn't. It doesn't stop you from filing suit. Your honor, the CDC. It allows a tenant who can qualify to resist the claims of the eviction claim or the suit on a deck, whatever it is, to resist it on the ground that they can't pay. Well, that is not. That doesn't stop you from going to court, that's my point. Well, the text of the order says that it is a federal misdemeanor to evict someone using state court process, and the plain text of that order suggests that it is in fact a federal crime to file eviction paperwork in the first place, and some courts have interpreted it that way. Well, I just made my point and I disagree with you. Yes, your honor, and to address the second point, even in those cases where. That bears on the issue of irreparable injury, because it's a fact you can go to state court because the statute does not prevent it. Well, your honor, the injury there. No, the regulations only give to the tenant the right to file a declaration and resist an eviction proceeding. That's all, but. And your honor, the injury is not the fact that my clients can't file paperwork necessarily. The injury is that they cannot retake possession of their own property, because what is undisputed, and the government never disputes this, is that a state court, the state judiciary, is forbidden by federal law from issuing an eviction order that can be executed to return the possession of the property to my client. Well, what is the statute or the regulation to say that? That is the text of the CDC eviction order. It says evictions are a federal misdemeanor. Anyone who who affects that. That's an eviction wrongfully obtained, wrongfully obtained because the person can't pay. There is no. And because there is a determined, a judicial determination that the person can't pay. That is not correct, your honor. The order says only eviction. It does not say unlawful eviction. It says if there is an eviction. And the courts, as the affidavits of my clients make clear, their local jurisdictions are interpreting that if they use state court systems to affect a lawful eviction under state law, that is a federal crime under the CDC eviction order. And so it is an important distinction to make. It's not just that they can't file paperwork. It's that they cannot retake possession of their own property using existing state remedies. The other that is one of the three irreparable harms that we've alleged in our in this case. And I want to stress the other two. In addition to simply being deprived of their own unique property, my clients have also been deprived of the total value of this property. And and this is something that they can never recover. This court's precedents are very clear that even something as simple as lost business opportunities can constitute irreparable harm. And it is also apparent under this court's precedent that losing the extensive financial harms that will not be repaid is irreparable. Those are irreparable harm. Is it enough to say to assert that those funds will not be repaid or some other level of proof required? Well, the proof in the record here is that there is very good reason to think that those funds will never be repaid. And probably the best evidence we have is that each of these tenants who are not paying have all signed affidavits under penalty of perjury consistent with the CDC order saying that they are unable to pay any rent at all. And that is certainly very good evidence that at the time of the filings here, that they were insolvent completely. They couldn't pay any of their rental obligations. And there's no contrary evidence in the record. There's no evidence anywhere to suggest that someday these tenants will have the resources to be able to pay only their current rental obligations, but any back. So all that's irrelevant. Your claim is a facial attack on the whole regime on the ground that it denies your ability to go to court, period. That is not accurate at your entire claim that you're barred from the courthouse. We are barred from the remedy of the courthouse. No access to the courts. That's that's the constitutional claim. Well, I if I if I may, either that's the claim where the district judge is wrong and saying that that was the play. Well, it is our position that the district court error because that is he didn't recognize your claim. Is that your argument? Our our constitutional argument, the district judge put in the order that your claim is denial of access to the courts. That's a constitutional claim. That is accurate. All right. And you're saying that he's wrong. He the district court erred in his expression of the denial of access to the courts. You agree that your claim is access to the courts, period. It is. But our specific claim deals with the eviction remedy. And if I could analogize to that, but that's after you get to court. Well, it's just like the body case. You cannot file a lawsuit. That is not the claim, your honor. And the claim is that our clients cannot affect an eviction under state law. And that is akin to the body case in the Supreme Court that dealt with divorces. In that case, people could file for divorces. They couldn't they couldn't get the divorce remedy because they had to pay for transcripts and filing fees. So it's not just that the courthouse doors are closed and we and some of our clients were able to file paperwork, but they can't accomplish they can't achieve any meaningful remedy while this eviction moratorium is is going on. Counsel, let me ask you, let me return to the irreparable injury piece. And you have mentioned the affidavits that the tenants have signed meeting the CDC conditions. We also have a situation here where the original CDC order was set to expire at the end of 2020, and it's been extended a couple of times and it's now set to expire at the end of June. But it it could be extended again. We don't know that information is not in the record. At what point did these extensions by the CDC demonstrate that landlords have suffered irreparable harm or or do these extensions not come into play in that inquiry at all? Well, I think it is worth noting, and I think it does come into play in the analysis. Certainly, the district court considered that in its analysis, because at the time of the original order, only a few months have passed since the original eviction order was issued. I mean, now we're talking about an order that started in September is still in effect nine months later. And meanwhile, these harms have just continued. Every one of those harms has been present for my clients since we filed suit in September. They have not been able to access their own property and its property that everyone accepts is their property. They have a legal right to have it, to possess it, to use it how they see fit. But because of operation in the CDC order only, they're not allowed to use their own property. They can't take it back. And instead, they must provide it to a nonpaying tenant indefinitely. I mean, that is the situation that's facing my clients. And that is irreparable. And that's compounding every single day. I'd like to take you to the statute for a moment. First of all, no one really discussed this, but are the appellees entitled to Chevron or our deference or any other kind of deference here? No, Your Honor. And the government has not requested deference. And the simplest case here is that this is not an ambiguous statute. This is pretty clear. It is very apparent from statutory text that the government has no authority here. And just like the Tiger Lily decision from the Sixth Circuit, hell, this is just a straightforward statutory question, or it can be. And if we look at the statute, the act of pest control or sanitation disinfection of infected articles, that does not bear any sort of relationship to a nationwide eviction moratorium. Counsel, your time. I'm sorry, Judge Grant, do you have a question? I do. Where do you see in Section 264B, where does the authority for those regulations for apprehension, detention, and conditional release of individuals, where does that authority flow from in your view? Well, potentially that comes from 264D1 that discusses regulations dealing with individuals who are reasonably believed to be infected. But I think the operative part of 264B is that it's very clearly a limitation. It says that the CDC doesn't have this sort of power for conditional release of individuals or other quarantine towards infected persons under subsection A. What I'm saying is the only spot in the statute that I see affirmative authority to regulate is in 264A. Do you disagree with that? Or do you think that your interpretation succeeds even if that's a broader source of authority than for those limited examples that are in A? Well, I think, no, I think if we look at 264D, it does suggest that there's a separate regulatory authority, D1, for infected individuals. But does it give that authority or respect that that authority was granted elsewhere within the statute? Well, I don't think, and I do think that there is a statutory ambiguity there about where authority might come from for quarantining infected persons. But I think looking at 264B, the best way to read that provision, and the only way to read that provision that makes sense with the statute, is to say that that's an extra limitation on the CDC's authority for infected persons. And again, the eviction moratorium order doesn't deal with infected persons. It deals with every person in the country, regardless of infection status, regardless of whether there's a diseased article or anything like that. Counsel, your time has expired, but you have three minutes for rebuttal. Ms. Klein, please proceed. Thank you, Your Honor. I will try to address in sequence specifically, first, Judge Branch, your questions about irreparable harm. Judge Grant, your questions about the structure of CDC order. So on irreparable harm, if you look at the declaration that was before Judge Boulay at the time that he denied the preliminary injunction, and in particular, I'm looking at Appendix 151, which is the declaration of David Krause, who is the only one of the two plaintiffs found to have standing, who is still a live issue. The plaintiffs disclaimed reliance on Mr. Rondeau in their opening brief, footnote one. So paragraph 14 of that Krause declaration, Judge Boulay looked at it, this was the entire evidence, and he concluded that under the standards for irreparable monetary harm that this court set out in Askins and Miller, plaintiffs did not substantiate the assertion that the tenant appears to be insolvent, and I will not likely be able to obtain any economic relief unless I can oust the tenant and re-rent. And as Judge Boulay explained, knowing that a tenant in the midst of a pandemic is unable to remain current on rent is not the same thing as suggesting that this tenant, who had been current on rent up through July 2020, was going to refuse to pay in the future, be unable to pay in the future, and particularly, Judge Boulay anticipated that there would be government assistance, which in fact has occurred. So if you scroll forward to the present, obviously this is now an outdated record, we don't have a current record, but we do know that Congress has appropriated 46 billion dollars in rental assistance, this money that gets paid directly to landlords. If I have a question about the outdated versus the current record, if we can consider, as you say we should, the rental assistance that Congress has offered, can't we also consider the dramatic decline of COVID-19 in the United States? I mean, I think it's hard to have it both ways, right? No, I agree, Your Honor, and that's absolutely something that the CDC considered and addressed specifically in its March 2021 extension, which is the most recent extension. And, you know, paraphrasing the public health experts, basically yes, we're on a path that we hope to make the pandemic a thing of the past, but we're not there yet. Even today, only a third of the population is fully vaccinated and there's a race against the variants, and of course the vaccinations did not appear on their own. Those are a product of massive federal investments and CDC action, and the CDC doesn't want to undermine the improving trajectory by prematurely lifting this moratorium or other guidance for unvaccinated people. Do we look at the record at the time that this rule was originally implemented, at the date of its extension, or at the current date? But you know what I mean. I confess that I'm struggling with that a little bit because this case is unusual and that the plaintiffs, rather than litigate the merits as, you know, the Tiger Lily plaintiffs did and some of the other plaintiffs did, chose to appeal the denial of a preliminary injunction. So I would think unless the preliminary injunction denial was reversible error and abuse of discretion at the time, that the most that could happen would be a remand, and it's not even clear how meaningful that would be given the expected expiration of the moratorium at the end of next month. But if the court looked at materials in the public record, then Judge Boulay's expectation that you would have rental assistance provided for tenants, but it gets paid directly to landlords, was in fact validated by, as I said, the two rounds of money that, for example, where Mr. Krause's property is in Columbia, South Carolina, the first wave of money in Richland County became available in April, just this past April, and the second wave of money was only just allotted by the Treasury Department, and this is in the public domain. So if anything, you could easily infer that landlords like Mr. Krause are going to be better off than they would have been if the federal government had done nothing. It's not clear you would have much of a market for rental properties, but for the federal government's quite extraordinary interventions to curb the pandemic and its economic fallout. But we don't have, we don't have, we know that one plaintiff has been knocked out because the plaintiffs knocked out because they received federal government assistance, correct? We have no record one way or the other. Judge Boulay only found that two plaintiffs demonstrated standing based on their declarations. One was the one who was knocked out, Mr. Rondeau, and the other was Mr. Krause, just because they actually established that the tenants were covered by the moratorium. Let me ask you, let me have asked you on the irreparable injury piece and looking at our Askins case, which involved the IRS. And there's certainly a factual distinction between the power of the IRS and the information that it has and the efforts that it can take versus a private landlord, which is what we have in this case. So there's a little bit of apples and oranges, at least as it seems to me, as to what is necessary to show that the we have in this case, we do have tenants who have filed declarations that meet the requirements of the CDC order. And I'm looking in particular at factor three, we know they're unable to pay the full rent. Factor four, they're supposed to be using best efforts to make timely partial payments. And I understand, at least in looking at the record, some people are paying zero. And in factor five, and this I think is critical, that eviction would likely render the individual homeless or force them to move into and live in close quarters in a new congregate or shared living setting. And what that says to me is that if this person is evicted, they have such an utter lack of assets that they would not be able to find another apartment, that they would either be homeless and on the streets or forced to live with family in a group home, or in a shelter. And so I think based on factors three and four, what I see is you have such a lack of ability to pay. I don't know why we are not in the insolvency arena and why this declaration is not in and of itself to show irreparable injury. Because in this particular context of the pandemic, insolvency at a particular point in time, this is the point Judge Boulay was emphasizing, doesn't mean judgment proof. And particularly once you add in the possibility of government assistance, which is now no longer a possibility but a reality. And so again, we don't have a record because the plaintiffs are proceeding based on a record that's now many months old. We don't know if Mr. Krause has tenants, even apart from this particular one, who are receiving governmental assistance, which would be money flowing directly to the landlord. If you were actually litigating a money damages claim against the government, then a question would be, are you really worse off? You don't just look at this one tenant. Are you, in fact, potentially better off from the stream of financial assistance that's coming from the federal government? I'm not sure it's fair to suggest that we should assume that people are off rather than worse off because of the stream of financial assistance that's not in the record. Is it possible to think that these people, these individuals, not only will be able to start paying their current rent, but will be able to repay the landlords for the entire past year or more? Well, under the explicit terms of the 2020 December legislation, this financial assistance is not only for rent but for rental arrears. I think it's up to 12 months. For example, in Richland County, I just pulled up the FAQs, you could go back to, I think it was the beginning of April 2020, which would be before this particular tenant stopped paying rent. I think she ended up paying through July 2020. I'm not saying we know the answer. We don't have the information as the has left a lot of questions, but the one thing that the district court said was from these, basically, a couple of sentences in the declaration, this isn't sufficient under Askins and Miller. To address the question about whether there's a heightened burden on the IRS, we didn't understand this court's decision to be saying the standards for determining whether monetary harm is irreparable differ depending on who the plaintiff was. In terms of getting information about the tenant, the landlord would be in a much better position to do that and represented in this declaration that there was a state court proceeding in which there had been a consent agreement. Presumably, there are mechanisms to find out more about the economic situation of this tenant. Could the landlord help her apply for rental assistance if she hasn't done so? Did she lose her job? Is she going to be rehired? Judge Millay basically just looked and said, as he read this court's precedent in Askins and Miller, this is insufficient. What would you say is the standard set out in Askins and Miller? We understood that it had to be not just that there's a temporary monetary harm, but that the judgment would be uncollectible. Saying in this context, it appears that the tenant today, it was then September 2020, can't remain current on her rent is not the same thing as saying the tenant will be unable to pay rental arrears and rent in the future. Again, to underscore what the CDC order does and doesn't do, it does not excuse a tenant's obligation to pay rent or the CDC has repeatedly said, doesn't prevent eviction proceedings from being filed. It's only the physical removal. Basically, this woman, as the court noted, said she has nowhere else to go. She would be homeless. It's that step. It's the actual physical removal from the property that was being paused because of the risk that people so evicted couldn't then comply with the general CDC guidance for the population at large, which is self-quarantine, self-isolation, social distancing. Most of the population could comply with that, but there's a segment that if physically removed from the property with nowhere else to go- I want to make sure to talk to you about the statutory interpretation. Do you think that under your theory of the regulatory interpretation, do you think that under your theory, the CDC could have said, we're very concerned about the spread of COVID in schools and so we say that all schools, public and private, are shut down until we say they can open again? I'm going to give an unsatisfying answer and explain why. I, as not a public health expert, the one thing we know is viruses are very scary and sometimes the CDC or other public health experts have to do things very quickly, such as if you think back to March 2020, halting cruise ship operations, things that are not specifically enumerated in the statute. I don't want to give away theoretical power that might be the only way to prevent the next pandemic. I want to emphasize, to try to give some comfort to the court, first, obviously these actors are not operating under the radar. They are serving at the pleasure of the president who's accountable and Congress has paid very close attention and intervened repeatedly. This is not something that would go unnoticed if a either extreme or disproportionate action were taken. But also to attempt to give more comfort, we're not asking the court to make general law about the scope of the 264A authority, although we do think, Judge Grant, your description that the affirmative grant of authority is all in paragraph A. The structure of the statute, as Judge Boulay explained, shows that B, C, and D are just restrictions on a grant of authority in A. Ms. Klein, to that point, we also have a decision in the Sixth Circuit in Tiger-Lily. Why did Judge Boulay get it right and Tiger-Lily got it wrong? I'll try to do the quick answer that we did file an opening brief in Tiger-Lily for the long answer. Tiger-Lily mistakenly thought that the quarantine authority was granted in D, as in dog. That's just a restriction to the extent you're talking about domestic quarantine. But if that were really the source of authority, there would be no authority when you were talking about international travelers. And there's no question if you read through the structure of the statute that you can also have quarantine for international travelers. So structurally, it's A that provides the full grant of authority subject to further limitations. And that's why when Congress, moving up in time to December 2020, when it looked at this very moratorium, it did two things. It said, I'm giving huge amounts of rental assistance for landlords and tenants. And in the very next provision, I am extending the order issued by the CDC under section 361 of the Public Health Service Act, 42 U.S.C. 264. That's not an accident. It wasn't sloppy or wrong on Congress's part. It understood, and as Justice Scalia noted in Branch v. Smith, you look to later enacted statutes and interpreting an earlier one. It understood that the grant of authority was in 264A and that this particular eviction moratorium was an appropriate tool in the arsenal of COVID control. Ms. Klein, I know your time has expired, but I have one final question. On the issue of irreparable harm, what if the CDC extends its order through the end of 2021 or 2022? When are we reaching irreparable harm or are we? If Congress continues to appropriate funds, it may well be that there's never irreparable harm. Again, I don't want to get out ahead of the CDC, which generally assesses health conditions a couple of weeks before the expiration of the order. And so if the pandemic doesn't warrant it, then there would be no reason to expect an extension beyond the end of June. This was just a hypothetical. No, I understand. And again, my hypothetical includes just as Congress was very sensitive to the economic impact on landlords already, that you would expect the Congress would continue to show that degree of sensitivity to their economic situation. Thank you, Ms. Klein. Mr. Kruckenberg, you have three minutes left for rebuttal. Thank you, Your Honor. And I just want to emphasize that, again, we are on a preliminary injunction. That is the posture we're in. But that means that this court has to balance the various factors. And I think it's very significant, as the Tiger Lily case determined in the Sixth Circuit, that the merits decision is so strong that the fact of the matter is the CDC does not have the authority to issue the eviction moratorium. And this court has to balance that against the irreparable harms that are faced by my clients. I also just want to address the district court's burden of proof, or the burden that the district court placed on the plaintiffs and not the government. Because there's been a lot of discussion about how the evidence in the district court sort of followed the CDC's invitation and speculated that there may be someday rental assistance for these landlords. First of all, that is factually just not the case. And even if we look at just the briefing and just the public record here, Congress has appropriated certain funds, but those funds have not reached my clients. And there's certainly nothing in the record or no evidence to suggest otherwise. And I think that just illustrates the impossible position the district court put the plaintiffs in. Because the district court said, we have to disprove the potential for repayment. But the district court, I think, credited the CDC's guess that maybe someday my clients will be repaid. And that, particularly on a preliminary injunction, is not an appropriate burden of proof. These are preliminary matters, and the court has to make preliminary factual determinations. But regardless of that, as we pointed out, there are other irreparable harms. And I think it is worth emphasizing that it is a distinct harm, aside from the insolvent tenants, that my clients cannot access their own property. And the district court's decision in that respect was simply that that doesn't matter, as long as you're a commercial. Could your clients access their property in ordinary times when they were renting it to the tenants? Is that part really any different? Isn't your argument just that you can't access your property, and you should be able to because these people aren't paying? It's not like you can just pop in the bedroom of the apartment on a given day, right? Certainly that's not what we're arguing. What we're arguing is that when you own property, you have the right to use it as you see fit, including excluding it from excluding people who don't pay rent, right? You can rent it out, and if they refuse to pay, then you can go to court, and you can evict them, and retake possession of your own property, and use it however you want to. You can live in it. You can rent it out again. My clients can't do any of that because of the eviction order. Thank you, counsel. Thank you very much. Your time has expired. Thanks to both of you. We have your case under submission, and we are adjourned.